269 So.2d 294 (1972)
Harold L. COOLING, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant.
No. 4004.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1972.
Rehearing Denied December 6, 1972.
Writ Refused February 1, 1973.
*295 Hall, Raggio & Farrar by R. W. Farrar, Jr., Lake Charles, for defendant-appellant.
James L. Babin, Lake Charles, for plaintiff-appellee.
Before SAVOY, HOOD and MILLER, JJ.
MILLER, Judge.
The trial court awarded plaintiff Harold L. Cooling the amount paid for attorney's fees to successfully defend two tort suits, together with attorney's fees in the instant case. Defendant U. S. F. & G. appeals contending that it did not owe a defense to its insured because of exclusions in its comprehensive general liability insurance policy. We affirm.
Coverage A of the policy provided that the company had the duty to defend any suit against the insured seeking damages on account of bodily injury ". . . even if any of the allegations of the suit are groundless, false, or fraudulent . . . " The relevant exclusions in the policy are in paragraph (m) and delete coverage ". . . to bodily injury or property damage included within the completed operations hazard or the products hazard."
Completed operations hazard includes:

* * * * * *
". . . bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) When all operations to be performed by or on behalf of the Named Insured under the contract have been completed,
(2) When all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
* * *" (Emphasis added.)
*296 The accident which brought about the two tort suits against Cooling is discussed at 257 So.2d page 829. Dulany v. Fruge, 257 So.2d 827 (La.App. 3 Cir. 1972).
Each of the injured plaintiffs sued Cooling alleging:
". . . that (Cooling) had on many occasions sold diesel engines and furnished other services to Luke Fruge and was familiar with the uses and conditions under which said diesel engines were to be operated. That (Cooling) knew or should have known at the time of sale of the unsafe features of the unit when put to its intended use. As a result of the foregoing and because of the vast knowledge concerning diesel engines, said (Cooling) knew or should have known of the dangers that could arise by the use of said diesel engines and knew or should have known and, therefore, should have warned and suggested to Luke Fruge of the need for the inclusion of adequate safety devices, including a flame arresting muffler, automatic cut-off switch and any other safety device which would make their operation safer. Their failure to do so when taken together with the actions of the other parties defendant herein, constituted actionable negligence as a joint tortfeasor." (Emphasis added.)
In summary, the two law suits which U. S. F. & G. refused to defend allege that a proximate cause of the accident was the negligent failure by the insured Cooling to warn Fruge of the need for installing certain safety devices on a diesel engine.
Issue: Does the quoted allegation allege a cause of action under "the completed operations hazard or the products hazard"? If it does, U. S. F. & G. does not owe a defense to Cooling.
The trial court held that there was no express exclusion in Cooling's comprehensive liability policy for injuries arising out of the failure to warn that machinery sold by insured could more safely be used with additional equipment, and that the failure to warn cannot be considered to be a part of the sale of the engine. The trial court followed the jurisprudential rule that exclusionary clauses in broad coverage insurance policies must be strictly construed and held that coverage existed under the policy terms.
The policy coverage language and particularly the products hazard and completed operations hazard exclusions form the basis of defendant's justification for its refusal to assume Cooling's legal defense. The policy contains no express exclusion of coverage for injuries arising out of a failure to warn where there is no affirmative duty to warn.
The question is whether plaintiff's alleged negligence is included within the exclusions. U. S. F. & G. contends that Cooling's failure to warn was part of his sale of a product and the exclusion applies. Defendant acknowledges that the products hazard and the completed operations hazard have been interpreted by the courts to apply only to injuries arising out of the sale or manufacture of products as opposed to those arising out of the performance of services. This distinction has resulted, says defendant, in holding that an insured with a policy containing the exclusionary clauses mentioned, who is sued for alleged negligence in performing a service is covered under the policy, notwithstanding the exclusions; whereas one sued for negligence resulting from the sale of products is not covered. Swillie v. General Motors Corporation, 133 So.2d 813 (La. App. 3 Cir. 1961); American Insurance Co. v. Hartford Accident and Indemnity Company, 198 So.2d 757 (La.App. 1 Cir. 1967).
We agree with the stated proposition, but we differ with the conclusion that because Cooling has been sued and because he has sold a product, it necessarily follows that the alleged negligence is part of the sale. The syllogism merely begs the question of coverage vel non.
*297 We find as did the trial court, that the alleged negligence under the peculiar facts of this case wherein there is neither a defective product sold nor faulty workmanship involved, is of a nature other than either sale or service as characterized by defendant. It is rather in the nature of a general risk of doing business which is the sort of risk which motivated Cooling to buy comprehensive liability insurance.
Because the insurer has the duty to clearly define its obligation and because it is an established rule of law that ambiguities in an insurance policy are construed against the insurer, we hold that the exclusions do not specifically exclude coverage to Cooling under the peculiar factual situation presented.
The extent of coverage under the policy issued to Cooling was a matter of private contract; the respective parties could stipulate the extent of coverage provided the stipulation was not contrary to public policy. Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958). Although the insured did have a voice in determining the extent of coverage, his participation was limited to the selection of desired coverages from an array of prepared standard clauses drawn by insurer. Insurance policies are adhesion contracts which may not be varied at the insistence of the insured save by his selecting a particular box designating his choice of standard coverages. Therefore the insurer has the duty to clearly express exclusions to its obligation. Kendrick v. Mason, supra. In a comprehensive liability policy such as that issued to Cooling, in which coverage is limited only by exclusionary clauses, this rule of law is particularly applicable. Another rule resulting from the disequal bargaining position of the contracting parties to an insurance contract, is the axiom that policy language which is not clear and unambiguous is to be construed against the insurer and in favor of the insured. LSA-C.C. Art. 1957; Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953); Francis v. Universal Life Insurance Co., 223 So.2d 188 (La.App. 3 Cir. 1969).
Ambiguous insurance clauses are to be construed according to the ordinary rules of contract construction. Ajuria v. Pan American Life Insurance Co., 245 La. 755, 161 So.2d 70 (1964). The rules of contract construction applicable to insurance contracts are those of the Civil Code. Casano v. Cook, 157 So.2d 616 (La.App. 4 Cir. 1963) writs denied 245 La. 577, 159 So.2d 287 (1964).
The Civil Code in Title 4, Book 3 "Interpretation of Agreements" provides:
"When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms." LSA-C.C. Art. 1950.
The parties intended that the exclusions would apply to coverage for injuries received as a result of the sale of defective products or as a result of negligence in positive representations or warranties. This construction is supported by the cases cited by U. S. F. & G. for the proposition that the exclusions apply to Cooling because his alleged negligence was a part of a sale of products. All but one of the cited cases are distinguished from the case at bar either on the basis of the presence of defects in the products sold or by tortious positive representations or warranties, neither of which is present in this case.
The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty to do so. The definitions of products hazard and completed operations hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn *298 when there is no affirmative duty to warn, the insurer could have so provided.
Inasmuch as the insurer has the duty to express clearly his obligation, Kendrick, supra, and also because ambiguities are to be construed against the insurer, Albritton, supra, we hold that the intent of the parties as evidenced by the language of the exclusions as well as by the failure of insurer to expressly limit its liability to exclude coverage for torts of omission or failure to warn is to include such coverage. LSA-C.C. Arts. 1947, 1957; Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113 (1956), 55 A.L.R. 1014; Conner v. Motors Insurance Corporation, 216 So.2d 555 (La.App. 3 Cir. 1968).
Gehrlein Tire Company v. American Employers Insurance Co., 243 F.Supp 577 (W.D.Pa.1964), affd., 3 Cir., 348 F.2d 918 held that the provision for the exclusion of coverage of accidents arising from completed operations and occurring away from the premises applies to "products hazards" and does not relate to negligence arising from the failure to warn of a defect that is not related to the sale of the product. There was no sale of product in Gehrlein, but only sale of a service, the installation of a tire. The insured's employee had installed tires and noted a defective rim but failed to warn of its existence. In the instant case, there was a sale of a diesel engine, but the failure to warn was not an essential part of the sale. In Gehrlein, there was an affirmative duty to warn. Cooling had no duty to warn that equipment should be purchased in order to maximize safety. There is no merit to the suit against Cooling, but the policy required a defense if ". . . the allegations of the suit are groundless, false, or fraudulent. . . "
Insurer suggests that groundless claims however tenuous should result in non-coverage if they can be tied in, however indirectly with the sale of a product. This contention crystalizes the insured's dilemma. His intent in purchasing a comprehensive liability policy was to protect himself against both substantial lawsuits and the harassment of lawsuits based on obviously groundless claims. The policy provides for a defense and the exclusions do not specifically delete the alleged negligence for which Cooling needed a defense.
The judgment of the trial court is affirmed, at appellant's costs.
Affirmed.