361 So.2d 1339 (1978)
ADA RESOURCES, INC., and Emerald Oil Company
v.
DON CHAMBLIN & ASSOCIATES, INC., C. D. Johnston, Seaboard Pipe & Equipment Company, Employers Casualty Company, American Motorists Insurance Company, Goldrus Drilling Company, Weatherford-Lamb, Inc., W. A. Smith, Employees Mutual Liability Insurance Company of Wisconsin.
No. 6583.
Court of Appeal of Louisiana, Third Circuit.
August 4, 1978.
Rehearing Denied September 25, 1978.
*1340 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Randall C. Songy, Lafayette, for defendant-appellant.
George H. Robinson, Jr., Lafayette, Aycock, Horne, Caldwell, Coleman & Duncan by Jack C. Caldwell, Franklin, for plaintiffappellant.
Lemle, Kelleher, Kohlmeyer & Matthews by Allen R. Fontenot, New Orleans, J. Barry Mouton and L. H. Olivier, Lafayette, Jacob D. Landry, of Landry, Watkins, Cousin & Bonin, New Iberia, Gordon, Arata, McCollam & Watters, Blake G. Arata and Sheryl Hopkins, New Orleans, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
Plaintiffs, Ada Resources, Inc. (hereinafter Ada) and Emerald Oil Company (hereinafter Emerald), instituted this action against various defendants seeking recovery for property damage allegedly sustained during the drilling of an oil well. One of the defendants, Seaboard Pipe & Equipment Company, Inc. (hereinafter Seaboard), brought a third party demand upon its; insurer, Employers Casualty Company (hereinafter Employers), as a result of Employers' refusal to defend Seaboard in the *1341 main demand. Thereafter, plaintiffs filed an amending and supplemental petition making Employers a defendant in the original demand. Employers filed a motion for summary judgment seeking a dismissal of the demands of the original plaintiffs and third party plaintiff on the grounds that Employers' policy did not cover the liability asserted against Seaboard by the plaintiffs. From a trial court judgment in favor of Employers dismissing the demands of original plaintiffs Ada and Emerald and third party plaintiff Seaboard, Ada and Seaboard appeal.
The issue on appeal concerns the correctness of the summary judgment that Employers had no duty to defend Seaboard against the allegations contained in the original plaintiffs' petition.
According to the evidence introduced in connection with the motion for summary judgment, plaintiffs were engaged in the drilling of an oil well in St. Martin Parish, Louisiana. After the well had been drilled to a depth of approximately 12,000 feet, it was decided that an attempt should be made to complete the well as a producing unit. On or about April 28, 1975, in preparation for the completion attempt, Emerald ordered from Seaboard a cross-over joint necessary to convert a casing string from eight (8)-round to Extreme line threads. The cross-over joint was supposed to contain eight-round threads at the pin end and Extreme line threads at the box end of the joint. Seaboard agreed to supply Emerald with the cross-over joint and in return Emerald would send a similar joint that required rethreading to Seaboard to replace the one made available to them. The crossover joint was shipped from Seaboard's premises to the drilling location by a private trucking line. Allegedly, Seaboard sent a cross-over joint with Hydril threading at the box end instead of the Extreme line thread as ordered. The alleged mistake went undetected and as a result of the problems with the cross-over joint having the wrong thread, the casing string allegedly became stuck in the hole. When an attempt was made to extricate the casing string from the hole in order to remove the cross-over joint, the cross-over joint pulled apart at the lower end and the casing string fell into the hole. Further efforts to remove the casing were to no avail.
The allegations of negligence set forth in plaintiffs' petition, insofar as Seaboard is concerned, can be summarized as follows:
(1) Seaboard was negligent in delivering a cross-over joint different from that which was ordered and it was also negligent in failing to properly inspect the cross-over joint requested in order to determine that it met the specifications of the joint ordered by Emerald.
(2) Seaboard was negligent in delivering a defective cross-over joint that did not meet strength or quality requirements.
Seaboard, at the time of this alleged occurrence, had in force a policy of comprehensive general liability insurance issued by Employers. The policy contains the following provisions:
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
"Coverage A. bodily injury or
"Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, . . . ."
Exclusion No. 16 contained in the policy provides in pertinent part:
"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard."
The phrase "Completed Operations Hazard" is defined in the policy as being:
*1342 "`completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation of warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."
The phrase "Products Hazard" is defined as follows:
"`products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;"
"Named insured's products" are defined as:
"`named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but `named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;"
The motion for summary judgment filed by Employers was based on Exclusion No. 16 which states that property damage liability coverage does not apply to property damage included within the completed operations hazard or the products hazard. Appellants argue that Employers has a duty to defend Seaboard based upon the allegations of plaintiffs' petition and that the policy exclusions relied upon by Employers do not unambiguously exclude coverage for purposes of a motion for summary judgment. Employers counters that the allegations contained in plaintiffs' petition fall clearly within either the "products hazard" or "completed operations hazard" exclusions and thus the motion for summary judgment was properly granted by the trial court.
It is well established that an insurer's duty to defend its insured is broader than its liability for damage claims. Likewise, the duty to defend depends upon the allegations of plaintiff's petition, and the insurer must defend unless the allegations unambiguously exclude coverage. The applicable test in such instances is if, assuming plaintiff's allegations are true, there is both coverage under the policy and liability to the plaintiff, the insurer is obligated to defend regardless of the outcome of the case. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (La. 1969); Employers Commercial Union Insurance Company v. Bertrand, 306 So.2d 426 (La.App. 3rd Cir. 1975); and Benoit v. Fuselier, 195 So.2d 679 (La.App. 3rd Cir. 1967).
Guided by these principles of law, we must now consider if Employers had the duty to defend Seaboard in this instance.
As to the alleged negligence of Seaboard in delivering the wrong joint and in failing to inspect the joint before delivery, we conclude that the decision rendered by this *1343 circuit in Cooling v. United States Fidelity and Guaranty Company, 269 So.2d 294 (La. App. 3rd Cir. 1972), writ refused La., 272 So.2d 373 (1973) is controlling. In Cooling, plaintiff Cooling filed suit against his insurer, U.S.F. & G., seeking reimbursement for attorney's fees expended to successfully defend two tort suits brought against the plaintiff earlier. The insurer had refused to defend these earlier suits due to "produce hazard" and "completed operations hazard" exclusions in its comprehensive liability policy issued to plaintiff.[1] The facts in Cooling reveal that Cooling had sold diesel engines to a person named Fruge and had failed to warn or suggest to Fruge the need for inclusion of adequate safety devices which would make the operation of the machine safer. Upon being injured in an accident involving these diesel engines, Fruge sued Cooling alleging the failure to warn and to suggest that the engines needed safety devices constituted actionable negligence. The question before the court was whether Cooling's alleged negligence was included within the exclusions in the U.S.F. & G. policy.
In affirming the trial court's judgment that there was coverage under the policy and thus the insurer owed a defense, the court in Cooling in part stated:
"The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty to do so. The definitions of products hazard and completed operations hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided.
"Inasmuch as the insurer has the duty to express clearly his obligation, Kendrick [Kendrick v. Mason, 234 La. 271, 99 So.2d 108], supra, and also because ambiguities are to be construed against the insurer, Albritton [Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111], supra, we hold that the intent of the parties as evidenced by the language of the exclusions as well as by the failure of the insurer to expressly limit its liability to exclude coverage for torts of omission or failure to warn is to include such coverage. LSA-C.C. Arts. 1947, 1957; Seguin v. Continental Service Life & Health Ins. Co., 230 La. 533, 89 So.2d 113 (1956), 55 A.L.R. 1014; Conner v. Motors Insurance Corporation, 216 So.2d 555 (La.App. 3rd Cir. 1968)."
Thus, the court in Cooling construed the identical "completed operations" exclusion and a "products hazard" exclusion as not encompassing omissions or failure to make representations. In another part of the decision, the court further rejected the notion that all claims connected to the sale of the product should result in non-coverage under the "products hazard" exclusion regardless of how indirectly they were connected to the sale of the product.
In the present case, neither the "products hazard" nor "completed operations" exclusions specifically include omissions or failures to make representations. The allegations concerning Seaboard's negligence in delivering a cross-over joint other than the one ordered and in failing to discover such mistake can be characterized as acts of omission. It is not alleged in plaintiff's petition that there was any affirmative representation or warranty made with respect to this joint; rather, Seaboard merely furnished Emerald a cross-over joint with the wrong threading. This alleged negligence amounts to simple negligence in the delivery of a product different from that which was ordered. The Employers policy contains broad coverage for property damages and provides that the company will defend any suit against the insured *1344 seeking damages for such losses. The exclusions relied upon do not specifically delete from coverage the alleged negligent omissions attributable to Seaboard. This negligence is in the nature of a general risk of doing business which comprehensive general liability policies seek to cover. Cooling, supra. Therefore, following the rationale of the Cooling case, we conclude that this type of risk was covered by the policy and Employers has a duty to defend Seaboard as to these allegations.
The remaining allegation in plaintiffs' petition concerns Seaboard's negligence in delivering a defective joint that did not meet strength or quality requirements. Appellants argue that the transaction in question does not fit within the "products hazard" exclusion because it does not meet the definition of "named insured's product". In the alternative, appellants argue that the policy definition is ambiguous.
The trial judge found that there was no genuine issue of material fact as to the nature of the transaction between Emerald and Seaboard. Although stating that there was evidence indicating that the joint was not sold but merely exchanged, the trial judge found that there was no genuine issue of material fact on this point since the rules relative to contracts of sale apply to contracts of exchange citing LSA-C.C. art. 2667. We do not dispute this finding.
Since this transaction in question was a sale or equivalent to a sale, the furnishing of the cross-over joint by Seaboard fits the definition of "named insured's products" contained in the policy. The defective joint allegation further fits within the "products hazard" exclusion since the property damage arose out of the furnishing of the joint, occurred away from Seaboard's premises, and after Seaboard had surrendered physical possession of the joint to others. Therefore, we agree with the trial judge that the defective joint allegation falls within the "products hazard" exclusion.
For the above reasons, the judgment of the trial court is affirmed insofar as it holds that Employers has no duty to defend as to the allegation that Seaboard negligently supplied plaintiffs with a defective joint that did not meet strength or quality requirements. The trial court judgment is reversed and set aside insofar as it holds that Employers had no duty to defend the remaining allegations of negligence against Seaboard. The matter is remanded for further proceedings in accordance with the views expressed herein. All costs of this appeal are assessed to defendant-appellee Employers.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] Although the "products hazard" exclusion in the U.S.F. & G. policy was not set forth in the Cooling opinion, the "completed operations" exclusion is the same as that contained in the present Employers policy.