376 So.2d 345 (1979)
WEST BROTHERS OF DeRIDDER, LOUISIANA, INC., Plaintiff-Appellant-Appellee,
v.
MORGAN ROOFING COMPANY, INC., Defendant-Appellee-Appellant.
No. 7108.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Hall, Lestage & Lestage, David R. Lestage, DeRidder, for plaintiff-appellant-appellee.
Collings & Collings, Robert L. Collings, Stockwell, Sievert, Viccellio, Clements & Shaddock, Fred H. Sievert, Jr., Raggio, Cappel, Chozen & Berniard by Thomas L. Raggio, Lake Charles, for defendant-appellee-appellant.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
*346 DOMENGEAUX, Judge.
In this suit, plaintiff, West Brothers of DeRidder, Louisiana, Inc., seeks to recover damages for the amount of money it cost to repair its office building, as well as damages for the inconvenience it sustained, when the building's roof began to leak.
The trial judge succinctly set forth the facts giving rise to this controversy in his written reasons, which we quote, as follows:
"West Brothers of DeRidder, Louisiana, Inc. originally filed this suit on July 1, 1974 in Beauregard Parish seeking a money judgment against the defendant, Morgan Roofing Company, Inc. for breach of contract and tort damages. After an unfavorable ruling on an exception for [sic] lack of jurisdiction over the person of defendant, at plaintiff's motion this suit was transferred to this Court. After transfer, defendant filed a peremptory exception of prescription which was subsequently referred to the merits. Defendant then filed an answer and third party demand against the Fidelity and Casualty Company of New York, Matthiessen and Hegeler Zinc Company and Superior Iron Works and Supply Company. No service was ever made on Superior Iron Works and Supply Company. The basis for the demand against the Fidelity and Casualty Company of New York was the alleged issuance of a policy of insurance to defendant insuring it against the claims of plaintiff. Matthiessen and Hegeler Zinc Company was the manufacturer of a sheet metal called Titanaloy. The Fidelity and Casualty Company of New York answered the third party demand denying coverage. Matthiessen and Hegeler timely filed a general denial to the third party demand of defendant, however on September 18, 1978, two days prior to trial on the merits, this party's attorney was permitted to withdraw as counsel of record when the Court was informed that his client was no longer in business and its assets was [sic] under seizure.
On May 9, 1969, plaintiff, West Brothers of DeRidder, Louisiana, Inc. entered into a building contract with a general contractor, Miller and Associates Construction Company, Inc., for the construction of an office building at DeRidder. All plans and specifications were prepared by Wilson, Morris, Crain and Anderson, an architectural firm of Houston, Texas. Cole and Garcia, another architectural firm, supervised construction at the building site. The defendant roofing company was the roofing sub-contractor of Miller. The general contractor experienced financial difficulties after construction commenced and on May 15, 1970 it's contract was cancelled by mutual consent. When the principal contract was cancelled, the roofing work was either complete or substantially complete. According to Mr. Ray Morgan, president of Morgan Roofing Company, Inc. the last roof work was done on May 20, 1970 and on May 21, 1970, he signed a contract directly with plaintiff-owner.
The plans, specifications and contract documents called for a built up tar and gravel roof with flashing of twenty-two (22) gauge paint-grip galvanized iron.
Mr. Edward D. Brandt, executive vice president and secretary of plaintiff, testified that he supervised the construction on behalf of his company. He testified that he had knowledge and experience in the construction field; that he held a BS degree in Civil Engineering and a MS degree in Merchandising. After construction began but prior to any roof work, Mr. Brandt testified he became concerned about the flashing specified by the architects. His objection to the twenty-two (22) gauge galvanized iron was that it required maintenance by painting and had the ability to rust. He liked Titanaloy because of its sheen and compatibility with the marble face of the building. Subsequently, the architects requested bids on stainless steel and Titanaloy flashing. Defendant relayed this request to its sheet metal supplier, Moreno's Inc. Bids were submitted on copper, stainless steel and Titanaloy. Subsequently a change order was issued by the architect changing the flashing from galvanized *347 iron to Titanaloy. It appears that at this point in time, Titanaloy was a new material on the market and neither plaintiff, defendant nor defendant's sheet metal supplier knew much about the material. The Titanaloy flashing was installed as specified and the building was completed and occupied in July or August of 1970.
In March or April of 1973, plaintiff became aware of some roof leaks. In July of 1973, defendant roofing company was called in to make repairs and it was learned that the Titanaloy had deteriorated. Defendant made repairs but as the deterioration of the flashing continued, the leak problem became more apparent. When plaintiff requested the defendant to correct the problems, defendant took the position that it's work had been performed properly and that the leaks were due to a failure of the Titanaloy.
In July of 1975 at plaintiff's insistance, roof repairs were made by Mr. William Dowden who used extruded aluminum to replace the Titanaloy. Mr. Dowden testified he had thirty-one (31) years in the roofing field. When he examined plaintiff's building he found the roof had been installed in a workmenlike manner. He testified that he had used Titanaloy on three (3) roofing jobs, and like plaintiff's roof, all had failed due to the deterioration of the metal. From the testimony of this witness and others it is obvious that Titanaloy was not a suitable material for roof flashing."
The trial judge concluded that the roof was installed properly and in a workmanlike manner. He felt that Morgan Roofing Company merely followed the plans and specifications prepared by plaintiff or plaintiff's architects. He applied La.R.S. 9:2771 and held that, inasmuch as the defect and deterioration of the roof was due to the Titanaloy applied according to plans and specifications given to the roofing contractor by the owner, the contractor was not liable.
With reference to the third party demand made by Morgan Roofing against its insurer, the Judge found that, inasmuch as the roofing contractor had not been found liable on the principal demand, the third party demand was important only in connection with the duty of the insurer to defend. The Judge stated that, by reviewing the pleadings and the policy of insurance issued, it was clear that the policy did not afford coverage. Consequently, the Judge held that the Fidelity & Casualty Company of New York had no duty to defend the third party plaintiff, Morgan Roofing.
From these judgments, both West Brothers and Morgan Roofing appeal. West Brothers appeals contending that it should have received judgment against Morgan Roofing on the principal demand. Morgan Roofing appeals the dismissal of the third party demand against the insurer, Fidelity.
On appeal, West Brothers argues that the trial court erred in applying La. R.S. 9:2771 to the facts of this case. Its argument in this regard is essentially factual, i. e. that the evidence established at the trial failed to establish that the leaks in the roof were due to the deterioration of the Titanaloy metal rather than to the improper workmanship of the defendant roofer. Plaintiff also contends that Morgan Roofing failed to properly follow the plans and specifications.
Turning to the record in the instant case, we think it clear that the evidence shows that defendant was in no way responsible for the selection of Titanaloy as the roofing material used in the construction of plaintiff's building. It merely applied the material according to the architect's instructions. It had no reason to believe that the Titanaloy was unsuitable or that it would fail.
Moreover, a review of the record gives rise to the clear implication that the Titanaloy itself must have been the cause of the leaking roof. Of particular significance were several photographs introduced into evidence, which graphically illustrated the deterioration of the material. Additionally, there was testimony to the effect that Titanaloy applied in other jobs in Louisiana had also failed. There is no indication that Morgan Roofing did its work in any fashion other than in a workmanlike manner.
*348 La.R.S. 9:2771 is applicable to the instant case. It provides:
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor."
The above statute effectively relieves the contractor of liability for defective materials used in a building where those materials are specifically called for by the plans and specifications prepared by the owner and where the contractor has no knowledge that the materials are defective. Lebreton v. Brown, 260 So.2d 767 (La.App. 4th Cir. 1972), affirmed 277 So.2d 645 (La.1973); Sisters of the Good Shepherd v. Quinn Construction Company, 225 So.2d 225 (La.App. 4th Cir. 1969), writ refused 254 La. 844, 227 So.2d 591 (1969).
As an alternative basis of potential liability, West Brothers argues that the roofing contractor, defendant herein, and its sheet metal sub-contractor-supplier, Moreno's, Inc., not a party to the litigation, are to be considered the manufacturer of the Titanaloy, inasmuch as Moreno's took the sheet metal and cut, formed, and bent it into the proper shape, and inasmuch as Morgan Roofing attached it to the roof of plaintiff's building. We do not find any merit to plaintiff's contention that the defendant roofer should be held to the same legal standard of liability as the actual manufacturer of the Titanaloy, Matthiessen & Hegler Zinc Company.
Thus, we affirm the action of the trial judge in rejecting plaintiff's demand.
With reference to the third party demand filed by Morgan Roofing against its insurer, Fidelity & Casualty Company of New York, we feel that the trial judge was likewise correct in finding that the insurer owed no duty to defend under the facts and circumstances of this case.
The law relative to an insurer's obligation to defend was clearly set forth in Lees v. Smith, 363 So.2d 974 (La.App. 3rd Cir. 1978), wherein it was stated:
"Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. An insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to provide a defense unless the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969); Ada Resources, Inc., et al. v. Don Chamblin & Assoc., Inc., et al., 361 So.2d 1339 (La. App. 3 Cir. 1978)."
The test to determine the insurer's duty to defend is to examine the plaintiff's petition under the assumption that all of the allegations contained therein are true. If, upon such an examination, there appears to be coverage under the policy and liability to the plaintiff, the insurer of the defendant is obligated to defend, regardless of the ultimate outcome of the case. Only if the policy unambiguously excludes coverage does the insurer not owe the duty to defend. In order to determine if the policy unambiguously excludes coverage, one looks to the language of the policy itself. Michel v. Ryan, 373 So.2d 985 (La.App. 3rd Cir. 1979).
In the instant case, the insurer issued a comprehensive general liability policy to Morgan Roofing covering the period from January 29, 1969, to January 29, 1972. Fidelity did not insure Morgan from January 29, 1972, to January 29, 1976.
The coverage afforded the insured provided, in part:
"I. COVERAGE ABODILY INJURY LIABILITY
*349 COVERAGE BPROPERTY DAMAGE LIABILITY
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, . . ."
"Occurrence" is defined by the policy as:
"`occurrence' means an accident, including injurious exposure to conditions which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"
However, the policy in question contains an endorsement which specifically excludes "completed operations hazard" and "products hazard."
The policy defines the "completed operations hazard" as follows:
"`completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."
The policy defines the "products hazard" as follows:
"`products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;"
Plaintiff's petition sought recovery in contract for a completed operation or, alternatively, in tort for a defective product. Apparently, the policy in question would have covered this type of case had it not been for the special endorsement. The insured did not take out this type of coverage, and, consequently, we think that the insurer was justified in refusing to defend the case.[1]
Consequently, we affirm the trial court's denial of Morgan Roofing's third party demand.
Our resolution of the case herein makes any discussion of the issues of prescription raised by the parties superfluous.
*350 For the above reasons, the judgment of the District Court is affirmed. Costs on appeal are assessed one-half to Morgan Roofing Company, Inc., and one-half to West Brothers of DeRidder, Louisiana, Inc.
AFFIRMED.
NOTES
[1] We also note that plaintiff's petition stated that it became aware of the damages on July 13, 1973. The policy period ended on January 29, 1972. The policy's definition of "occurrence" states that the damage must occur within the policy period. There could be some argument that, inasmuch as the damage did not become apparent until after the policy period lapsed, there is another basis serving as justification for the insurer's refusal to defend. In light of the outcome herein, we need not express any opinion in this regard.