William A. SCARBOROUGH, Plaintiff,

v.

NORTHERN ASSURANCE COMPANY OF AMERICA, et al., Defendants.

MISSISSIPPI VALLEY SILICA CO., INC., Defendant-Third-Party-Plaintiff-Appellant,

v.

COLUMBIA CASUALTY CO., et al., Third-Party-Defendants-Appellees.

No. 82–3530.

United States Court of Appeals, Fifth Circuit.

Oct. 28, 1983.

---

McGlinchey, Stafford & Mintz, John E. Galloway, New Orleans, La., for defendant-third-party-plaintiff-appellant.

Drury, Lozes & Curry, Felicien P. Lozes, New Orleans, La., for third-party-defendants-appellees.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This is an appeal from a judgment rendered for two insurers, appellees Columbia Casualty Company and Commercial Union Insurance Company (the "Appellees") dis-

* Circuit Judge of the Eleventh Circuit, sitting by designation.

missing a third-party claim asserted against them by their insured, appellant Mississippi Valley Silica Company, Inc. ("Mississippi Valley"), a supplier of sand, seeking reimbursement for defense costs incurred by Mississippi Valley in successfully defending a products liability action brought against it, in the main suit below, under the Jones Act, 46 U.S.C. § 688, and the general maritime law, by William A. Scarborough, an employee of one of Mississippi Valley's customers, who contracted silicosis as a result of his employment as a sandblaster. After a nonjury trial, the district court held that Appellees had no duty to defend Mississippi Valley against Scarborough's claims, since their policies excluded coverage of claims arising out of Mississippi Valley's products. The question before us is whether Scarborough's complaint, which alleged, among other things, that Mississippi Valley had furnished his employers sandblasting material (sand) "without proper instructions for its use," alleged a ground of liability against Mississippi Valley that was not excluded by the exclusion provisions of Appellees' policies. Construing Scarborough's complaint against Mississippi Valley liberally, and, bound as we are by the Louisiana jurisprudence on this question, we hold that the complaint alleged a theory of liability, based on Mississippi Valley's asserted negligent failure to warn Scarborough (or his employer) of the dangers involved in the use of its product, that was not excluded by the particular wording of the "Products Hazard" or other exclusion clause of Appellees' policies. We therefore reverse the district court's judgment.

## I.

From 1958 until 1967, Scarborough worked as a sandblaster on offshore drilling platforms for Coating Specialists, Inc. and Land & Marine Applicators, Inc. During this period, Mississippi Valley, which was engaged in the business of mining, bagging, and selling sand, supplied the sand that was used in the sandblasting operations of Scarborough's employers.

Scarborough's employment as a sandblaster ended in May 1967, and, over ten years later, Scarborough discovered that he had contracted silicosis, allegedly as a result of his exposure to siliceous particles during his work as a sandblaster. On August 15, 1977, Scarborough filed suit under the Jones Act and the general maritime law against his former employers, the owners of the offshore platforms on which he had worked as a sandblaster, and against the suppliers of equipment and materials used in his sandblasting operations, including Mississippi Valley.

Paragraph VI of Scarborough's complaint made the following allegations:

"On information and belief, defendants, Mississippi Valley Silica Company, Inc., Jahncke Services, Inc., Stan-Blast Abrasives, a division of Standard Paint & Varnish Company, Pulmosan Safety Equipment Company, Clemco Industries, a/k/a Clemco Clementina, Ltd., Lone Star Industries, Inc. and Mayronne Drilling Mud & Chemical Company, at various times between 1958 and 1967 furnished defendants, Coating Specialists, Inc. and Land & Marine Applicators, Inc., with equipment and materials to be used in sandblasting operations which are inherently defective and/or negligently manufactured and/or which were provided by those corporations to those defendants, and to the plaintiff, without proper instructions for its use."

Paragraph XIV of the complaint alleged that:

"As a result of his employment with defendants, Coating Specialists, Inc. and Land & Marine Applicators, Inc., and as a result of the improper and/or unsafe equipment furnished by defendants, Mississippi Valley Silica Company, Inc., Jahncke Services, Inc., Stan-Blast Abrasives, a division of Standard Paint & Varnish Company, Pulmosan Safety Equipment Company, Clemco Industries, a/k/a Clemco-Clementina, Ltd., Lone Star Industries, Inc. and Mayronne Drilling Mud & Chemical Company, and as a result of the negligence of said corporations, a

lung condition known as silicosis was caused and/or aggravated with respect to the plaintiff's periods of employment . . . ."

On March 28, 1980, Mississippi Valley filed a third-party complaint against the various insurance companies which had provided liability coverage to it from 1958 through 1978. The third-party complaint alleged that these insurers had a duty to indemnify Mississippi Valley from and against the allegations of Scarborough's complaint and from and against any cross-claims arising therefrom. Among the insurers made third-party defendants by Mississippi Valley, were the Appellees, who provided comprehensive general liability coverage to Mississippi Valley from 1958 through 1967.[1] The insurance policies issued by Appellees to Mississippi Valley could not be found. However, the parties stipulated to the terms of these policies,[2] which provided, in part, as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"(A) bodily injury . . .

"to which this insurance applies caused by an occurrence . . . .

"The company [Appellees] shall have the right and duty to defend any suit against the insured [Mississippi Valley] seeking damages on account of such bodily injury . . . even if any of the allegations of the suit are groundless, false, or fraudulent . . . ."

The policies contained the following exclusion:

"This insurance does not apply:

" . . . .

"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to

perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work . . . ."

The policies also did not cover "Products Hazard," which was defined as follows:

" '[P]roducts hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others . . . ."

The Appellees denied coverage and refused to defend Mississippi Valley against the claims made against it by Scarborough, relying on the above-quoted "Products Hazard" exclusion. Mississippi Valley itself, therefore, incurred the costs of defending Scarborough's suit, which proceeded to trial, and where, at the conclusion of Scarborough's case in chief, the district court granted an instructed verdict in favor of Mississippi Valley which thereafter became final.

Mississippi Valley's third-party complaint against Appellees was then tried to the court on a joint stipulation of facts. Mississippi Valley contended that Scarborough's complaint asserted a ground of recovery against it based on its alleged negligence, and that Appellees' policies did not exclude from coverage claims based on negligence. The district court, however, rejected this contention, holding that the "Products Hazard" exclusion was broad enough to exclude claims "arising out of products caused to be

---

1. Mississippi Valley was insured by Commercial Union from 1959 through 1963, and from 1963 through 1967, by Columbia Casualty.

2. In their "Joint Stipulation of Facts," the parties refer to an "attached" policy, which shows the terms of the policies issued to Mississippi Valley. We, however, have been unable to locate this policy in the record, and have relied on the provisions as set forth in the district court's opinion and in the parties' briefs.

defective or faulty by negligence," and that there was "no allegation of a failure or omission to warn" in Scarborough's complaint.

## II.

The sole question on appeal is whether, under their policies, Appellees owed Mississippi Valley a defense against the negligence allegations of Scarborough's complaint. We note, at the outset, that there is no contention that Mississippi Valley furnished any equipment or material to Scarborough's employers other than sand.[3]

The parties agree that Louisiana law governs this case. Under Louisiana law, whether an insurer has a duty to defend its insured is determined by a comparison of the terms of the policy and of the allegations of plaintiff's petition. *Audubon Coin & Stamp Co. v. Alford Safe & Lock Co.*, 230 So.2d 278, 279 (La.App. 1st Cir.1969). "Or, as some courts have expressed it, the language of the policy and the allegations of complaint must be construed together, to determine the insurer's obligation." 7C Appleman, *Insurance Law and Practice* (Berdal ed.) § 4683 (1979).

Louisiana decisions require that the terms of an insurance policy clearly and unambiguously exclude from coverage a claim asserted against the insured, *West Brothers of DeRidder, Louisiana, Inc. v. Morgan Roofing Co., Inc.*, 376 So.2d 345, 348 (La.App. 3d Cir.1978), and if the terms are ambiguous, then they are construed against the insurer and in favor of the insured. *Albritton v. Fireman's Fund Insurance Co.*, 224 La. 522, 70 So.2d 111, 113 (1953). In particular, "exclusionary clauses in broad coverage insurance policies must be strictly construed" against the insurer. *Cooling v. United States Fidelity & Guaranty Co.*, 269 So.2d 294, 296 (La.App. 3d Cir.1972), *writ ref'd*, 272 So.2d 373 (La.1973).

In determining the duty to defend, the plaintiff's petition against the insured is examined with the assumption that the allegations contained therein are true. *West Brothers*, 376 So.2d at 348. And the allegations are liberally construed in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253, 259 (1969). An insurer must provide its insured with a defense unless the petition, like the policy, unambiguously excludes coverage. *American Home*, 230 So.2d at 259. "If upon such an examination there appears to be coverage under the policy and liability to the plaintiff, the insurer is obligated to defend, regardless of the ultimate outcome of the case." *West Brothers*, 376 So.2d at 348.

As stated earlier, the district court held that Scarborough's complaint made no allegation of a negligent failure to warn. We disagree. Construing Scarborough's complaint liberally, we find that it makes two allegations of negligence against Mississippi Valley: first, that Mississippi Valley was negligent in the design and/or manufacture of its sand; and second, that Mississippi Valley, by furnishing sand "without proper instructions for its use," negligently failed to warn Scarborough of the dangers associated with the use of the sand in sandblasting operations.[4] The first allegation is plainly excluded by the "Products Hazard" exclusion provision of Appellees' policies. The question is, therefore, whether the second allegation, which is based on a negligent failure to warn, is also excluded.

Mississippi Valley, relying on *Cooling v. United States Fidelity & Guaranty Co., supra,* argues that Appellees' policies afforded coverage. In *Cooling,* the original claimant alleged that the insured, Cooling, a vendor of diesel engines, failed to warn the claim-

---

**3.** Nor is it disputed that any injury or harm to Scarborough from Mississippi Valley's sand occurred away from any premises owned by or rented to Mississippi Valley and after Mississippi Valley had relinquished physical possession of the sand to others.

**4.** At trial, Scarborough contended that Mississippi Valley negligently failed to warn him of the dangers of using the sand in his sandblasting operations without using an air-fed hood.

ant of the need for using certain safety devices with Cooling's product. Cooling's insurer, U.S.F. & G., relying on the provisions of its policy which excluded claims for "bodily injury . . . included within the completed operations hazard or the products hazard,"[5] denied coverage and refused to defend Cooling. Cooling, however, successfully defended the lawsuit against him, and then sued U.S.F. & G. for reimbursement of his defense costs. The Louisiana Court of Appeal, in affirming a judgment for Cooling against U.S.F. & G. for Cooling's cost of defense of the suit by the original claimant, held that the alleged negligent failure to warn was not excluded by the U.S.F. & G. policy. The court stated:

"U.S.F. & G. contends that Cooling's failure to warn was part of his sale of a product and the [completed operations hazard or products hazard] exclusion applies. [U.S.F. & G.] acknowledges that the products hazard and the completed operations hazard have been interpreted by the courts to apply only to injuries arising out of the sale or manufacture of products as opposed to those arising out of the performance of services. . . .

"[W]e differ with the conclusion that because Cooling has been sued and because he has sold a product, it necessarily follows that the alleged negligence is part of the sale. . . .

"We find as did the trial court, that the alleged negligence under the peculiar facts of this case *wherein there is neither a defective product sold nor faulty workmanship involved, is of a nature other than either sale or service as characterized by [U.S.F. & G.]. It is rather in the nature of a general risk of doing business which is the sort of risk which motivated Cooling to buy comprehensive liability insurance.*

". . . .

"The definitions of products hazard and completed operations hazard do not mention omissions or failure to warn when there is no affirmative duty to do so. The definitions of products hazard and completed operations hazard do include injuries arising out of representations or warranties. But the converse, the failure to represent is not included in these definitions. If the parties intended to limit the liability of the insurer by excluding coverage for omissions and failure to warn when there is no affirmative duty to warn, the insurer could have so provided." 269 So.2d at 296–98 (emphasis added).

Characterizing *Cooling* as an "unusual decision which basically stands alone among many decisions which have upheld the meaning 'of the products exclusion,'" Appellees rely on the language of the "Products Hazard" exclusion in their policies, which excludes claims "arising out of the named insured's products." Although the policy in *Cooling* contained a products hazard exclusion, that exclusion is not set forth in the opinion. However, in *Templet v. Goodyear Tire and Rubber Company, Inc.,* 341 So.2d 1248 (La.App. 1st Cir.), *writ denied,* 343 So.2d 1077 (La.1977), the same products hazard exclusion as the one in this case was construed by the Louisiana Court of Appeal not to exclude coverage of a claim based on the alleged negligent failure to warn of dangers involved in the use of a product.

In *Templet,* the claimant was killed when a tire which he was mounting blew off the rim. The claimant's estate sued the seller of the rim and the seller's insurer, alleging, among other things, that the seller failed to warn the claimant of the dangers associated in mounting a tire from the wrong side of the rim. The seller's insurer successfully moved for a summary judgment in the trial court, on the ground that its policy excluded

---

**5.** "Completed operations hazard" was defined, in part, in the policy as follows:

"'. . . *bodily injury* and *property damage* arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the *bodily*

*injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *Named Insured.* "Operations" include materials, parts or equipment furnished in connection therewith. . . .'"

claims arising out of products hazards and completed operations. In reversing the trial court, the Louisiana Court of Appeal, relying on *Cooling,* concluded that:

> "... the allegation of negligence of failing to warn of the danger involved in mounting a tire from the wrong side of the rim does not fall within the exclusionary language, but rather is covered by the general liability portion of the policy, and thus there is coverage...." 341 So.2d at 1250.

*See also Ada Resources, Inc. v. Don Chamblin & Associates, Inc.,* 361 So.2d 1339 (La. App. 3d Cir.1978) (identical products hazard exclusion held not to exclude claims for property damage based on insured's negligent failure to provide the particular type of product that was ordered by the claimant).

▆▆▆▆ Appellees also seek to rely on the above-quoted exclusion "(k)" in Appellees' policies, which, as far as the opinions show, is not contained in the policies construed in *Cooling* and *Templet.* As noted, this exclusion provides, in part, that:

> "This insurance does not apply: ... to bodily injury ... resulting from the *failure of* [Mississippi Valley's] *products ... to perform the function or serve the purpose intended by [Mississippi Valley],* if such failure is *due to* a mistake or *deficiency in any* design, formula, plan, specifications, advertising material or *printed instructions* prepared or developed by any insured ...." (Emphasis added.)

We find, however, that this exclusion is not intended to encompass the negligent failure

to warn that was presented by Scarborough's complaint.[6] The language of this exclusion apparently deals, instead, *only* with situations where bodily injury results from the product's failure to perform the function or serve the purpose which the named insured (typically, as here, the manufacturer or seller) intended it to perform or serve.[7] The exclusion is inapplicable to injury resulting from the use of a product which *does* perform the functions and serve the purposes which the insured seller or manufacturer intends for it to perform or serve. Here, Scarborough's failure to warn theory is not based on a failure of the sand "to perform the function or serve the purpose intended" for it by Mississippi Valley. There is no allegation or contention that Scarborough's injury arose from or was caused by any failure of the sand to properly perform its intended function (or serve its intended purpose) in the sandblasting operations.[8]

### III.

▆▆▆▆ In a case where state substantive law governs, this Court is obliged to apply the law of that state as interpreted by its highest court. *Samuels v. Doctor's Hospital, Inc.,* 588 F.2d 485, 488 (5th Cir.1979). Although *Cooling* and *Templet* are decisions of intermediate appellate courts, they are controlling, absent strong indication that the Supreme Court of Louisiana would have decided them differently. *Mott v. Mitsubishi International Corp.,* 636 F.2d 1073 (5th Cir.1981); *Shelp v. National Surety Corp.,* 333 F.2d 431, 439 (5th Cir.), *cert. denied,* 379 U.S. 945, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964).

---

**6.** In any event, whether this exclusion encompasses an allegation of negligence based on failure of the insured seller or manufacturer to warn of the dangers associated with the use of a product which performs the function or serves the purpose which the insured seller or manufacturer intended it to perform or serve, is, at the most, unclear. Under Louisiana law, when an ambiguity relates to an exclusionary clause of an insurance policy, the policy is interpreted liberally in favor of providing coverage. *Hanagriff's Mach. Shop, Inc. v. Slaw Const. Co., Inc.,* 380 So.2d 146, 148 (La.App. 1st Cir.1979).

**7.** Respecting an insured such as Mississippi Valley, this exclusion would apply, for example, to a situation where an accident occurs as a result of faulty sandblasting because the sand used was not applied in the proper amounts due to a mistaken or deficient instruction, or where injury resulted from a bridge which collapsed because the sand used in the concrete was incorrectly mixed with cement and other materials due to a mistake or deficiency in the printed instructions (or because the sand furnished was of an incorrect specification, such as being too fine, for that particular purpose).

**8.** *Compare* note 7, *supra.*

In both *Cooling* and *Templet,* applications for writs of review were denied by the Supreme Court of Louisiana. While denial of a writ of review "does not necessarily constitute approval of the court of appeal opinion or create precedent," *Lafleur v. Fidelity & Casualty Co. of New York,* 385 So.2d 1241, 1244 n. 1 (La.App. 3d Cir.1980), "when the Supreme Court refuses to grant a writ and declares its reason to be that the judgment or ruling complained of is correct, 'it may be said that the Supreme Court affirms or at least approves the decision' or ruling complained of." *State v. Ardoin,* 197 La. 877, 2 So.2d 633, 637 (1941), *quoting Carrere v. City of New Orleans,* 162 La. 981, 111 So. 393, 405 (1926). *See also Kroncke v. Caddo Parish School Board,* 183 So. 86, 88–89 (La.App. 2d Cir.1938) (where the only question involved is a legal one, the Supreme Court, in refusing a writ, places its approval on the decision); *Phillips v. Nereaux,* 357 So.2d 813, 820 (La.App. 1st Cir. 1978) (where Supreme Court denied writ of review with notation: "There is no error of law in the judgment and opinion of the Court of Appeal," that decision was considered by court of appeal to be affirmed by the Supreme Court).

In *Cooling,* the writ of review was "refused" with the notation: "No error of law." We have found no subsequent decision by the Supreme Court which departs from the holding in *Cooling* or its approval of it.[9] In *Templet,* the writ of review was "denied" with the notation: "Judgment not final." Thus, the decision in *Templet,* unlike *Cooling,* did not receive the approval of the Supreme Court. We have, however, found no subsequent decision by the Supreme Court which questions or departs from the

holding in *Templet* respecting its construction of the "Products Hazard" exclusion.[10]

Hence, we consider ourselves bound by the decisions in *Cooling* and *Templet,* and hold that Scarborough's negligent failure to warn allegation was not excluded by the referenced provisions of Appellees' policies, and that the district court erred by its contrary holding.

### IV.

In their brief, Appellees, as an alternate ground for upholding the district court's judgment, contend that their policies were "not on the risk" as of the date of the manifestation of Scarborough's symptoms. In a pretrial memorandum, filed on July 31, 1981, Appellees also contended that if there was any defense obligation owed to Mississippi Valley it "should be shared by those insurers on the risk from 1958 through 1978 rather than just Commercial Union and Columbia Casualty who were on the risk 1958 to 1967." However, neither of these contentions were advanced in the "Joint Stipulation of Facts" filed on November 17, 1981, by the parties. Nor are they mentioned by the district court in its opinion. Thus, it is unclear whether these contentions were, in fact, advanced at trial and considered by the district court, especially since the court held that Scarborough's claim was excluded by the referenced exclusion provisions of the policies and, therefore, was not required to reach such other contentions. Moreover, the record before us fails to contain the pertinent terms of the policies affecting the issues raised by Appellees' contentions. Hence, we decline to consider these contentions, and order that the case be remanded

---

**9.** The district court's reliance on *Roberts v. P. & J. Boat Service, Inc.,* 357 F.Supp. 729 (E.D. La.1973), is misplaced. There, the claim was based on injuries arising out of an explosion of an engine which had been negligently rebuilt by the insured. Thus, it was alleged that the *product itself* was defective and was caused to be defective by negligence. *See also State Farm Fire & Cas. Co. v. Avant,* 404 So.2d 1311, 1312 (La.App. 2d Cir.1981) (claim based on defectively designed and constructed fireplace); *Mut v. Newark Ins. Co.,* 289 So.2d 237, 246 (La.App. 1st Cir.1973), *writs denied,* 290 So.2d 910 and

290 So.2d 912 (La.1974) (claim based on negligent construction of wall); *Meier v. Hardware Mut. Cas. Co.,* 281 So.2d 793, 795 (La.App. 3d Cir.1973) (claim based on negligently constructed gin pole). In all these cases there was a defect in the physical condition of the product. Here, the relevant claim is not that the sand was substandard.

**10.** Nor have we found any decisions of the Louisiana Courts of Appeal which question the holdings in *Cooling* and *Templet.*

to the district court for consideration of them.[11] The judgment below is therefore reversed and remanded to the district court.

REVERSED AND REMANDED.

11. We do not imply that the district court on remand may not properly determine that Appellees had waived or failed to properly present these contentions; that is simply a matter we are unable to determine on the basis of this record and without the benefit of any ruling thereon by the district court. Moreover, we imply no determination as to the facial legal validity of the "share the cost of defense" contention, or its appropriateness as against an insured who has borne all such costs, or how or when procedurally it may be raised.