LaBATT COMPANY, et al., Appellants,

v.

HARTFORD LLOYD'S INSURANCE COMPANY, Appellee.

No. 13–88–451–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1989.

Richard C. Danysh, Amy E. Harren, Judith R. Blakeway, San Antonio, for appellant.

Ryan E. Stevens, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This case is before us following summary judgment in favor of Hartford Lloyd's Insurance Co. (Hartford). Hartford sought a declaratory judgment for construction of an insurance policy and a declaration that it has no duty to defend LaBatt Co., LaBatt Institutional Supply Co., and LaBatt Institutional Supply Co., d/b/a LaBatt Food Services (LaBatt Companies). The LaBatt Companies are defendants in a lawsuit styled Benjamin Trapnell, et al., v. Sysco Food Services, Inc., et al. By granting summary judgment in Hartford's favor, the trial court found that Hartford had no duty to defend the LaBatt Companies. We affirm.

Hartford's declaratory judgment suit alleges that on November 1, 1983, it issued an insurance policy to the LaBatt Companies. This policy, known as a "TEXAS COMMERCIAL MULTI–PERIL POLICY," obligates Hartford to defend any person within the definition of an "insured" in any lawsuit claiming damages for personal injury arising out of the ownership, maintenance, or use of the insured premises, and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises. The policy's protection does not extend to bodily injury claims and property damage arising out of the named insured's products or reliance upon representation or warranty.

The *Trapnell* suit alleges that food products consumed by Susan Trapnell, one of the plaintiffs, were manufactured, designed, marketed and distributed by the LaBatt Companies. Susan Trapnell died after allegedly consuming foods containing sulfites. The *Trapnell* plaintiffs allege that the LaBatt Companies were negligent and grossly negligent in the design, manufacture, and marketing of these foods. Specifically, they maintain that the LaBatt Companies were negligent and grossly negligent either because they designed foods to contain sulfites, or because they used sulfites in preparation of these foods. They also assert that the LaBatt Companies were negligent and grossly negligent in marketing these foods without warning the public that the foods either contained sulfites or that sulfites were used in their preparation, and that consumption of these foods could be harmful.

The *Trapnell* plaintiffs also allege that due to the defective design, manufacture, and marketing of these foods, the food products were both defective and unsafe for their intended purposes. They also state that the food products were unreasonably dangerous to intended users. Specifically, they maintain that the food products were defective because they were either designed to contain sulfites, or because sulfites were used in their preparation. Furthermore, they allege that the food products were defective because they were not accompanied by a warning to the public that the food products either contained sulfites or that sulfites were used in preparation of the foods, and that consumption of these food products could be harmful.

Additionally, the *Trapnell* plaintiffs allege that the LaBatt Companies expressly and impliedly warranted to the public that the products they manufactured, designed, marketed and distributed were of merchantable quality and safe and fit for their intended purpose. The *Trapnell* plaintiffs also alleged *res ipsa loquitur.*

The LaBatt Companies generally deny Harford's suit and assert that the *Trapnell* suit alleges a cause of action within the policy terms. The LaBatt Companies state that a fact issue remains regarding the relation between the policy terms and the *Trapnell* allegations.

Hartford moved for summary judgment on grounds that the *Trapnell* suit fails to allege a cause of action within the policy terms. Hartford maintains that the *Trapnell* allegations stem from the alleged consumption of products manufactured, designed, marketed or distributed by the LaBatt Companies. Hartford also alleges that the subject insurance policy expressly excludes bodily injury arising out of the named insureds' products or reliance upon a representation or warranty where the bodily injury occurs away from the premis-

es owned by or rented to the LaBatt Companies, and where the bodily injury occurs after physical possession of the food products have been relinquished to others.

In their response to Hartford's summary judgment motion, the LaBatt Companies argue that the *Trapnell* suit alleges a cause of action covered by the subject policy. They also assert that the *Trapnell* plaintiffs allege a cause of action based upon a failure to warn, and that the subject policy's "products hazard" exclusion does not exclude this allegation. Furthermore, before the failure to warn allegations can be properly excluded, a determination must be made regarding whether or not any of the LaBatt Companies' products were defective. The LaBatt Companies also contend that the subject policy is ambiguous regarding coverage of warranty of fitness or quality of products.

To obtain a summary judgment, a movant must establish that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *First Federal Savings & Loan Association v. Ritenour,* 704 S.W.2d 895, 901 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The burden of proof is on the movant, and all doubts concerning the existence of a genuine issue of material fact are resolved against him or her. *MMP, Ltd.,* 710 S.W.2d at 60; *Ortiz v. Spann,* 671 S.W.2d 909, 911 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Once the movant establishes a right to a summary judgment, the burden shifts to the nonmovant.

■ The LaBatt Companies, in their first point of error, contend that the trial court erred in entering summary judgment favorable to Hartford because the undisputed evidence shows that the "products hazard" exclusion is not applicable to relieve Hartford of its duty to defend the negligence claims in the *Trapnell* suit. The general coverage provision of the policy in question states:

> The Company [Hartford] will pay on behalf of the insured [LaBatt] all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Hartford relies on a policy exclusion which states:

> It is agreed that the insurance does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

The term "products hazard" is defined on a different page of the policy as follows:

> "products hazard" includes bodily injury and property damage *arising out of the named insured's products* or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others; (Emphasis added.)

Hartford contends that the *Trapnell* suit falls within the "products hazard" exclusion of the insurance policy. On the other hand, the LaBatt Companies argue that Hartford's "products hazard" exclusion does not relieve Hartford of its duty to defend the *Trapnell* suit. They maintain that the *Trapnell* suit alleges negligence claims which are not excluded by the "products hazard" exclusion.

We hold that the *Trapnell* plaintiffs' causes of action clearly fall within the "products hazard" exclusion. Therefore, Hartford has no obligation to defend the *Trapnell* suit. The bodily injury alleged in the *Trapnell* suit arose from the LaBatt Companies' products. Furthermore, the bodily injury occurred away from the premises owned by or rented to the LaBatt Companies. The bodily injury also occurred after physical possession of the La-Batt Companies' products had been relinquished to others.

■ Regarding the failure to warn claim, under the language of the "products hazard" exclusion, the relevant inquiry is whether the bodily injury, not the alleged tortious conduct, occurred on the insured premises. *Viger v. Commercial Insurance Co. of Newark, N.J.*, 707 F.2d 769, 772 (3rd Cir.1983) (where the "products hazard" exclusion is identical to the one *sub judice*). Here, no dispute exists concerning whether the food products left the LaBatt Companies' premises or whether the preparation and consumption of the food products as well as Susan Trapnell's injury occurred away from the LaBatt Companies' premises. The undisputed facts lead to the inescapable conclusion that the *Trapnell* plaintiffs' claims arose out of a "products hazard" as defined in Hartford's policy. *Viger*, 707 F.2d at 772.

■ Texas law is well established that the allegations contained in the plaintiff's petition determine an insurer's duty to defend the suit. *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982); *Hayden Newport Chemical Corp. v. Southern General Insurance Co.*, 387 S.W.2d 22, 24–25 (Tex.1965). The *Trapnell* suit is grounded on a defect in products sold *not* a negligent omission unrelated to any product defect. A failure to warn claim will fall outside of a "products hazard" exclusion only if it is based on something other than a defect in the product sold by the insured. *Viger*, 707 F.2d at 773.

The LaBatt Companies cite several cases supporting the proposition that when a plaintiff sues an insured and the plaintiff's petition asserts a cause of action for negligent failure to warn, a "products hazard" exclusion is inapplicable and the insurer, on insured's behalf, must defend the lawsuit. *See Scarborough v. Northern Assurance Co. of America*, 718 F.2d 130 (5th Cir. 1983); *Chancler v. American Hardware Mutual Insurance Co.*, 109 Idaho 841, 712 P.2d 542 (1985); *Templet v. Goodyear Tire and Rubber Co.*, 341 So.2d 1248 (La.Ct. App.1976); *Cooling v. United States Fidelity and Guaranty Co.*, 269 So.2d 294 (La. Ct.App.1972).

In *Scarborough*, it was undisputed that the complained of injury was not caused by a defective product sold by the insured; the failure to warn theory was not based on a failure of the product to perform the function or serve the purpose for which it was intended. *Scarborough*, 718 F.2d at 136. Moreover, the language of the "products hazard" exclusion contained in the *Scarborough* opinion greatly differs from that of the one before us.[1] The *Scarborough* Court points out that the "products hazard" exclusion in *Cooling* is not set forth in the lower court's opinions. *Scarborough*, 718 F.2d at 135. Furthermore, neither case involved an allegation of a defective product. *Chancler* involved the sale of a modified crane to the plaintiff by the insured. The crane collapsed, injuring the plaintiff. The court held that the "products hazard" exclusion did not apply because the insured had modified the crane before it was sold to the plaintiff and because the modified portion collapsed and caused the injury. The failure to warn claim was based on negligent rendering of a service and not products liability. *Chancler*, 712 P.2d at 546.

■ In the instant case, we have allegations of a defective product. The fact that the *Trapnell* plaintiffs have alleged negligence in their petition does not mean that a claim based in products liability becomes one based in negligence. "Products

---

1. The exclusion, as stated in the court's opinion states pertinent: "This insurance does not apply ... to bodily injury ... resulting from the failure of [Mississippi Valley's] products ... to perform the function or serve the purpose intended by [Mississippi Valley], if such failure is due to a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by any insured...."

liability" is a generic phrase used to describe the liability of a manufacturer or supplier to a person injured by a product. One of the appropriate methods to use, in Texas, when asserting a claim based upon an injury suffered from a defective product is negligence. Furthermore, one type of product defect complained of in an allegation of negligence is a design defect which may have its inception in poor packaging or inadequate warnings. The first point of error is overruled.

■ In their second point of error, the LaBatt Companies argue that the trial court erred in entering summary judgment in Hartford's favor because the undisputed evidence shows that the "products hazard" exclusion does not relieve Hartford of its duty to defend the breach of warranty of fitness alleged in the *Trapnell* suit. The insurance policy contains three relevant sections: (1) "DEFINITIONS—SECTION II" in which "products hazard" is defined; (2) "LIABILITY INSURANCE FORM SECTION II LIABILITY COVERAGE;" and (3) "EXCLUSIONS ENDORSEMENT (Completed Operations and Products Hazards)." The LaBatt Companies argue that Hartford's policy is ambiguous regarding coverage for breach of warranty of fitness and quality. We disagree.

The language under the "LIABILITY COVERAGE" section expressly does not exclude a warranty of fitness or quality of the named insured's products, and the language under the "EXCLUSION ENDORSEMENT" excludes the warranty. We see no ambiguity between these two provisions. The "EXCLUSION ENDORSEMENT" clearly states:

> This endorsement *modifies* such insurance as is afforded by the provisions of the policy relating to the following: (emphasis added).

### TCMP LIABILITY INSURANCE COMPREHENSIVE GENERAL LIABILITY INSURANCE

It is agreed that the insurance does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

The language of this endorsement, in plain English, *modifies* all provisions relating to

this type of injury. Even if this endorsement did not expressly state that it modifies all related provisions, the language of the endorsement could be considered a special provision of the policy, agreed to and made a part thereof by both insurer and insured, and that as a special provision, it controls over the more general policy "LIABILITY COVERAGE" section. *See Tarrant County Ice Sports, Inc. v. Equitable General Life Insurance Co. of Oklahoma*, 662 S.W.2d 129, 131–32 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). When no ambiguity exists, the court has the duty to give the words used their plain meaning. *Puckett v. United States Fire Insurance Co.*, 678 S.W.2d 936, 938 (Tex.1984).

■ Unless insurance policies are to be drafted individually to cover each contract, which would increase the premiums considerably, the necessity to integrate provisions from different parts of the policy seems inevitable. In any event, a policy which is otherwise clear is not rendered ambiguous simply because it requires the insured to read it thoroughly and carefully. *Viger*, 707 F.2d at 774. We overrule the second point of error.

The judgment of the trial court is AFFIRMED.