# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2754

_____

| | | |
|---|---|---|
| Wanda H. Slater, as assignee and real party in interest; LCI Equipment, Inc., as assignor and nominal plaintiff, | * * * * | |
| Plaintiffs - Appellants, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Arkansas. |
| Republic-Vanguard Insurance Company, | * * * | |
| Defendant - Appellee. | * | |

_____

Submitted: April 12, 2011
Filed: August 17, 2011

_____

Before LOKEN, BALDOCK,* and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

LCI Equipments, Inc. ("LCI"), a Texas corporation, imported and sold a Yanmar tractor that had been manufactured and used in Japan and then rebuilt in Vietnam. Rudy Slater subsequently purchased the tractor at auction and was killed in a roll-over accident while driving it. His wife, Arkansas resident Wanda Slater,

_____

*The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

commenced a wrongful death action in state court, asserting negligence and strict product liability claims against LCI and others, focused primarily on the tractor's lack of a roll-over protection system ("ROPS"). LCI's insurer, Republic-Vanguard Insurance Company ("Republic"), also a Texas corporation, denied coverage and refused to defend LCI under its Commercial General Liability policy (the "Policy").

With the wrongful death suit pending, LCI assigned its rights in the Policy to Slater who then commenced this action against Republic in Arkansas state court, joining LCI as a nominal plaintiff and seeking a declaratory judgment that the Policy covered her claims against LCI. See Ark. Code Ann. § 16-111-103a, -104. Republic removed the action to federal court, alleging diversity jurisdiction because LCI is a nominal plaintiff. Slater neither moved to remand nor questioned federal jurisdiction. The district court[1] granted Republic's motion for summary judgment, concluding it had no duty to defend or indemnify LCI because coverage was excluded by the "Products/Completed-Operations" endorsement in the Policy. Slater v. Republic-Vanguard Ins. Co., No. 09-269, 2010 WL 2710463, at *5-6 (E.D. Ark. July 7, 2010). Slater appeals, asserting for the first time the absence of diversity jurisdiction and further arguing that the district court erred in construing the Policy exclusion. We affirm.

## I.  Diversity Jurisdiction

Slater argues on appeal that the district court lacked subject matter jurisdiction because plaintiff LCI, a Texas citizen like Republic, destroyed complete diversity between the parties, see 28 U.S.C. § 1332(a)(1); therefore, the lawsuit was improperly removed because the district court lacked "original jurisdiction," 28 U.S.C. § 1441(a). We must examine an issue of subject matter jurisdiction *de novo* even when it was not

---

[1]The Honorable James A. Moody, United States District Judge for the Eastern District of Arkansas.

raised in the district court. <u>Mansfield, C. & L.M. Ry. Co. v. Swan</u>, 111 U.S. 379, 382 (1884). If the district court did not have original jurisdiction when the case was removed, remand to state court is required, even after final judgment, unless the district court would have had jurisdiction "if the suit had been filed . . . in the posture it had at the time of the entry of final judgment." <u>Barbara v. N.Y. Stock Exch., Inc.</u>, 99 F.3d 49, 56 (2d Cir. 1996); <u>compare</u> <u>Grubbs v. Gen. Elec. Credit Corp.</u>, 405 U.S. 699, 702-05 (1972), <u>with</u> <u>Am. Fire & Cas. Co. v. Finn</u>, 341 U.S. 6, 18 (1951). Here, for diversity jurisdiction purposes, the case was in the same posture when judgment was entered as when the case was filed.

On the face of the pleadings, the district court had original jurisdiction when this case was removed, and when judgment was entered. Slater's state court complaint listed plaintiffs Wanda and Barton Slater "as assignees and real parties in interest," and joined LCI as "assignor and nominal plaintiff." The presence of a nondiverse party who is "nominal" may be ignored in determining whether diversity jurisdiction exists. <u>Salem Trust Co. v. Mfrs' Fin. Co.</u>, 264 U.S. 182, 190 (1924); <u>Bradley v. Md. Cas. Co.</u>, 382 F.2d 415, 419 (8th Cir. 1967). Republic's removal petition alleged complete diversity because LCI, a nondiverse plaintiff, is a nominal party. Slater did not move to remand or otherwise challenge jurisdiction. The "Statement of Undisputed Facts" in the memorandum in support of Slater's motion for summary judgment on the merits stated, "LCI assigned its rights and interests under the Policy for the underlying claim." In ruling on the cross motions, the district court stated, "LCI assigned its rights and interests under the Policy for the claim and judgment to Mrs. Slater." <u>Slater</u>, 2010 WL 2710463, at *1. An absolute, non-collusive assignment to a diverse assignee creates diversity jurisdiction. <u>See</u> <u>Kramer v. Caribbean Mills, Inc.</u>, 394 U.S. 823, 828 n.9 (1969); 28 U.S.C. § 1359.

Slater argues that LCI was not *in fact* a nominal plaintiff because LCI assigned its rights under the Policy for the claim resulting from Slater's lawsuit "reserving and setting aside $100.00." But this is not conclusive. The written assignment went on to grant Slater (i) the "sole right to collect from the Insurer the net proceeds of the

Policy," (ii) the "sole right to exercise all other rights permitted by the terms of the Policy . . . and to receive all benefits and advantages derived therefrom," and (iii) the right to control the exercise of those rights "without notice to, or assent by [LCI]." Compare Navarro Savs. Ass'n v. Lee, 446 U.S. 458, 464-65 (1980). This was not an assignment of the limited right to sue on behalf of a nondiverse party, like the assignment at issue in Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc., 149 F.3d 794, 797 (8th Cir. 1998). It was a complete assignment of the right to commence and control this lawsuit, and to receive whatever may be recovered on the claims asserted.

In many cases considering whether a partial assignment created or destroyed diversity jurisdiction, federal courts have disregarded assigned or retained interests that were more substantial than the $100 interest retained by LCI. See Attorneys Trust v. Videotape Computer Prods., Inc., 93 F.3d 593, 599 (9th Cir. 1996) (nondiverse assignee with a 12% contingent fee interest); Grassi v. Ciba-Geigy, Ltd., 894 F.2d 181, 182, 186 (5th Cir. 1990) (2% interest assigned to nondiverse assignee; diverse assignor retained 98% interest and control of the litigation); Bailey v. Prudence Mut. Cas. Co., 429 F.2d 1388, 1389-90 (7th Cir. 1970) (diverse claimants were assigned right to control litigation and to recover their judgment; nondiverse assignor retained only the right to any excess recovery).

Slater contends that LCI's interest is real and there is no evidence of an improper motive to destroy diversity jurisdiction. But motive is not the dispositive issue. Slater pleaded that LCI is a nominal party. This created diversity jurisdiction, and Republic removed the case in reliance on that status. The district court then had original jurisdiction over the action. Slater could have moved to remand or otherwise denied federal jurisdiction, presenting evidence that LCI was in fact not a nominal party. She did not do so. Instead, she litigated her claim to judgment in the district court and then raised this issue for the first time on appeal, attempting to nullify the district court's expenditure of scarce judicial resources because she lost on the merits of her claim in federal court. While a party may not consent to subject matter

jurisdiction that does not exist, "a court will not interfere with the consequences of a plaintiff's selection in naming parties, unless the plaintiff has impermissibly manufactured diversity or used an unacceptable device to defeat diversity." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 93 (2005) (quotation & citation omitted). Here, as Slater structured the case, the district court had, and properly exercised, diversity jurisdiction.[2]

## II.  The Merits

The Policy provided LCI coverage for "bodily injury," including death, "to which this insurance applies."  Republic denied coverage based on the "Products/Completed-Operations" endorsement, which provided that "no coverage is provided, nor is there any duty to defend, claims, suits, actions or proceedings against the insured arising out of 'products' or 'completed operations' . . . ."  The relevant Policy definitions were:

> 11.a. "Products-completed operations hazard" includes all "bodily injury" . . . occurring away from premises you own or rent and arising out of "your product" or "your work."
>
>   c. This hazard does not include "bodily injury" . . . arising out of:
>
>> (2) The existence of tools, uninstalled equipment or abandoned or unused materials . . . .
>
> 14. "Your product" means . . . a. Any goods or products . . . manufactured, sold, handled, distributed or disposed of by [you] . . . .
>
>  "Your product" includes:

---

[2]Alternatively, if LCI's $100 interest made it more than a nominal party, we would exercise our discretionary authority "to dismiss a dispensable nondiverse party." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837 (1989).

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

15. "Your work" means . . . a. Work or operations performed by you or on your behalf . . . .

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

b. The providing of or failure to provide warnings or instructions.

In the wrongful death lawsuit, Slater alleged that LCI "designed, manufactured, sold, marketed and/or distributed [an unreasonably dangerous] tractor which caused the death of Rudolph Slater." She further alleged that LCI negligently failed to "design, manufacture, and install [safety features]," to "adequately test and inspect the subject tractor," and to "adequately warn . . . [of] hazards in the use of the subject tractor." The district court concluded that Republic had no duty to defend or indemnify LCI because these claims were all excluded by the "Products/Completed-Operations" exclusion. The tractor was a product "manufactured, sold, handled, or distributed" by LCI. It had left LCI's premises at the time of Rudy Slater's accident. It was "completed" when it left LCI's possession, despite lacking a ROPS, because it was put to its intended use by Rudy Slater. The exclusion applied to LCI's alleged negligent failure to install an ROPS and to provide safety warnings, as well as to the strict product liability claims, because these claims are "grounded on a defect in [a] product sold *not* to a negligent omission unrelated to any product defect." Slater, 2010 WL 2710463, at *4, quoting LaBatt Co. v. Hartford Lloyd's Ins. Co., 776 S.W.2d 795, 799 (Tex. App. 1989).

On appeal, Slater does not contest the district court's decision that Texas law governs this dispute. Under Texas law, a liability insurer owes its insured two distinct duties, to defend third-party claims and to indemnify covered losses. D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd., 300 S.W.3d 740, 743 (Tex. 2009). For purposes of this appeal, the parties appear to agree that the two duties are coterminous. To determine whether Republic had a duty to defend, we review the insurance policy and Slater's underlying complaint for a potentially covered claim. Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). We review the district court's interpretation of the Policy under Texas law *de novo*. Columbia Cas. Co. v. Ga. & Fla. Railnet, Inc., 542 F.3d 106, 110 (5th Cir. 2008). Under Texas law, we must "adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004).

1. Slater first argues that Republic had a duty to defend LCI in the underlying lawsuit and a duty to indemnify LCI for the judgment in Slater's favor because LCI's failure to install ROPS safety equipment on the tractor falls within the exception to the "Products/Completed-Operations" exclusion for bodily injury "arising out of . . . [t]he existence of . . . uninstalled equipment . . . ." Though not raised in the district court, Slater urges us to consider this issue because it is "purely legal and requires no additional factual development." Rittenhouse v. UnitedHealth Grp. Long Term Disability Ins. Plan, 476 F.3d 626, 630 (8th Cir. 2007) (quotation omitted).

Slater relies on two cases from other jurisdictions concluding that "injury resulting from improperly installed equipment is legally equivalent to an injury resulting from uninstalled equipment." Chancler v. Am. Hardware Mut. Ins. Co., 712 P.2d 542, 549 (Idaho 1985), citing U.S. Fid. & Guar. Co. v. Nat'l Tank & Mach. Works, Inc., 402 So.2d 925, 928 (Ala. 1981). Other courts have rejected this reading, concluding that "this exception to 'completed operations' refers only to tools,

equipment and materials which on completion of an operation should have been removed by the assured from the premises." U.S. Sanitary Specialties Corp. v. Globe Indem. Co., 204 F.2d 774, 777 (7th Cir. 1953); accord Shelter Mut. Ins. Co. v. DeShazo, 955 S.W.2d 234, 237-38 (Mo. App. 1997); Travelers Ins. Co. v. Ty Co. Servs., Inc., 399 S.E.2d 562, 564 (Ga. App. 1990). We adopted the Seventh Circuit's interpretation in construing a completed-operations coverage provision under Minnesota law in Tonicstar Ltd. v. Lovegreen Turbine Servs., Inc., 535 F.3d 790, 794 (8th Cir. 2008), and we summarily affirmed a ruling that the "uninstalled equipment" exception to a completed-operations exclusion "only applied to equipment present at the site when the accident occurred" in Cincinnati Ins. Co. v. Sawmill Hydraulics, Inc., 217 F. App'x 572, 573 (8th Cir. 2007) (unpublished) (applying Illinois law). The Fifth Circuit concluded that the alternative holding in Chancler is contrary to Texas law in U.S. Fire Ins. Co. v. Massey Irrigation & Liquidation, Inc., 40 F.3d 385 (table), 1994 WL 652520, at *2-3 (5th Cir. 1994) (unpublished). The parties cite no decisions interpreting the exception under Texas law.

Slater's reply brief argues that her interpretation of the uninstalled equipment exception is not unreasonable, and she distinguishes Sawmill Hydraulics on the ground that the safety features that could have been installed on the Yanmar existed but were not installed. If credited, Slater's fact-intensive contention could have a potentially wide-ranging impact, excepting from the "Products/Completed-Operations" exclusion all claims alleging that a completed product caused injury away from the insured's premises because the insured failed to install a particular feature. Such a sweeping interpretation contrasts starkly with the exception's narrow focus on the "existence of tools, uninstalled equipment or abandoned or unused materials." Texas law cautions courts not to "ascribe to one word a meaning so broad that it is inconsistent with its accompanying words." U.S. Fid. & Guar. Co. v. Goudeau, 272 S.W.3d 603, 606 (Tex. 2008) (quotation omitted). Moreover, the issue as argued by Slater is not purely legal; it may well require additional factual development in a particular case. In these circumstances, we conclude the issue was not properly preserved in the district court, and we decline to consider it further.

2.     Slater next argues that her claims for bodily injury caused by LCI's negligent failure to inspect and test the tractor, and to provide adequate safety warnings, are not excluded because those injuries arose out of *services* LCI was required to perform, not its "product." The Texas Court of Appeals rejected a similar argument in LaBatt:

> In the instant case, we have allegations of a defective product. The fact that . . . plaintiffs have alleged negligence in their petition does not mean that a claim based in products liability becomes one based in negligence. "Products liability" is a generic phrase used to describe the liability of a manufacturer or supplier to a person injured by a product. One of the appropriate methods to use, in Texas, when asserting a claim based upon an injury suffered from a defective product is negligence. Furthermore, one type of product defect complained of in an allegation of negligence is a design defect which may have its inception in poor packaging or inadequate warnings.

776 S.W.2d at 799-800l.[3]  The Court held that the underlying plaintiffs' claims for negligent failure to provide safety warnings "clearly fall within the 'products hazard' exclusion." Id. at 799.  Though the Supreme Court of Texas has not addressed the issue, we agree with the district court's conclusion that LaBatt reflects Texas law. Moreover, the definition of "Your product" in Republic's Policy expressly excluded the "providing of or failure to provide warnings or instructions," unlike the exclusion at issue in LaBatt, 776 S.W.2d at 798.  Accord U.S. Fire Ins. Co., 1994 WL 652520 at *3.

---

[3]See also Tex. Civ. Prac. & Rem. Code § 82.001(2) ("'Products liability action' means any action against a manufacturer or seller for recovery of damages arising out of personal injury [or] death . . . allegedly caused by a defective product whether the action is based in . . . strict products liability, negligence, . . . or any other theory or combination of theories.").

Slater argues that the Court in <u>LaBatt</u> did not consider claims of negligent failure to inspect and test, claims that arise out of services LCI negligently performed before the tractor left its premises. Slater did not make this argument in attempting to distinguish <u>LaBatt</u> in the district court, and the court did not address the issue. On appeal, Republic argues that these are excluded defective-product claims. Alternatively, Republic argues that the claims for negligent inspection and testing are excluded because they fall within the definition of the "Your work" portion of the Products/Completed-Operations exclusion, which excludes "[w]ork or operations performed by you or on your behalf" and "[t]he providing of or failure to provide warnings or instructions." Slater argues, without citation to Texas authority, that the "Your work" exclusion "encompasses only affirmative work or operations performed by the insured, not omissions." Republic's contention is more consistent with the plain language of the Policy. Slater has failed to show plain error.

The judgment of the district court is affirmed.

_____