# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1478
_____

Eric Sorenson; Melanie Ann Forner

*Plaintiffs - Appellants*

v.

Joanne Marie Sorenson

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 13, 2022
Filed: April 4, 2023
_____

Before LOKEN, MELLOY, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

After David Sorenson (Decedent) died, Eric Sorenson and Melanie Forner, two of his three adult children, brought this *pro se* diversity action in the District of Minnesota against Joanne Sorenson, Decedent's second wife. They asserted multiple claims arising from Joanne's alleged use of her power as Decedent's attorney-in-fact to close two Certificates of Deposit and keep funds that Decedent intended would

benefit his children. Joanne[1] moved to dismiss, alleging lack of diversity jurisdiction because Decedent's third child, Paul Sorenson, like Joanne a resident of California, is an indispensable, non-diverse party. See Fed. R. Civ. P. 19. Paul then assigned to his sister Melanie all his potential claims against Decedent's estate and a variety of claims against Joanne. Plaintiffs -- still proceeding *pro se* -- filed a First Amended Complaint (FAC) eliminating many of the factual allegations and claims in the original complaint, and alleging that Joanne committed fraudulent misrepresentation and statutory civil theft, see Minn. Stat. § 604.14, by abusing her role as Decedent's attorney-in-fact in transferring certificate of deposit (CD) funds to herself.

Joanne filed a second motion to dismiss, arguing that Paul's incomplete assignment did not establish diversity jurisdiction, and renewing her arguments that the FAC failed to state a claim, see Fed. R. Civ. P. 12(b)(6), and that Plaintiffs are not real parties in interest, see Fed R. Civ. P. 17(a). The district court[2] determined it has diversity subject matter jurisdiction and dismissed the FAC claims with prejudice because they fail to state a claim and Plaintiffs are not real parties in interest. Plaintiffs appeal the district court's dismissal. We review a Rule 12(b)(6) dismissal *de novo*, applying Minnesota law, accepting as true the well-pleaded allegations in the FAC, and drawing all reasonable inferences in favor of Eric and Melanie, the non-moving parties. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Joanne renews her challenge to the court's diversity jurisdiction, arguing for the first time on appeal that Paul's assignment manufactured diversity jurisdiction in violation of 28 U.S.C. § 1359. We review this issue for plain error. We affirm.

---

[1]For convenience, we will refer to Decedent's three children and second wife Joanne by their first names.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota

## I.  Background and Procedural History

Decedent married Joanne in 1996.  In the fall of 2001, Decedent signed a durable statutory short form power of attorney, naming Joanne his Attorney-in-Fact and son Eric his successor Attorney-in-Fact.[3]  Decedent checked the box on the form authorizing Joanne as Attorney-in-Fact to transfer Decedent's property to herself.  In 2010, Decedent began experiencing symptoms of dementia.  When Decedent died from lymphoma on November 14, 2015, his dementia had progressed to late-stage Alzheimer's Disease.

In response to Joanne's first motion to dismiss for lack of diversity jurisdiction, Paul executed an "Assignment of Claims for Damages."  In exchange for $1, Paul assigned to sister Melanie all claims against Decedent's estate and a variety of claims against Joanne, including all claims against Joanne individually and in her roles as Decedent's spouse and Attorney-in-Fact, and as executor of Decedent's estate.  The Assignment excluded claims against any future estate of Joanne or her heirs, and claims regarding Joanne's estate planning.  Joanne's second motion to dismiss argued that Paul was still an indispensable party who defeats diversity jurisdiction because the Assignment "does not assign all claims Paul Sorenson may have against [Joanne]."  Plaintiffs then acquired *pro bono* counsel and opposed Joanne's motion to dismiss.

The district court ruled that it had subject matter jurisdiction because, by executing an Assignment that assigned Paul's "interest in the assets that are the subject of the present litigation to Melanie Forner . . . Plaintiffs effectively dismissed Paul Sorenson as an indispensable party and complete diversity exists between the

---

[3]Decedent used the statutory short form power of attorney form set forth in Minn. Stat. § 523.23, subd. 1.  When used, this form "must be construed in accordance with sections 523.23 and 523.24."

parties." Sorenson v. Sorenson, No. CV 20-2121 (MJD/DTS), 2022 WL 329678, at *4-5 (D. Minn. Feb. 3, 2022). Turning to the merits of Joanne's Rule 12(b)(6) and Rule 17(a) motions to dismiss, the court concluded that Plaintiffs failed to state plausible Minnesota state-law claims for relief because, at most, the FAC showed only that Joanne had committed civil fraud and theft against Decedent. Id. at *5-7. Therefore, Plaintiffs lacked "standing" and are not real parties in interest because the claims they assert belong to Decedent or his estate. Id. at *7-8. The court dismissed the entire action with prejudice. Id. at *8. Plaintiffs appeal; on appeal, Joanne renews her challenge to the district court's subject matter jurisdiction.

## II. Discussion

**A. Subject Matter Jurisdiction.** On appeal, Joanne argues for the first time that Paul's Assignment did not cure the absence of diversity jurisdiction because it was done solely to "create diversity" in violation of 28 U.S.C. § 1359. Therefore, the Assignment did not eliminate a non-diverse indispensable party. We note two aspects of this contention before we review the issue of subject matter jurisdiction for plain error. First, Joanne did not file a cross appeal challenging the district court's finding that Paul's assignment of his "interest in the assets that are the subject of the present litigation to Melanie Forner" was effective to dismiss Paul as an indispensable party. Therefore, that finding is binding on appeal, subject to the § 1359 issue.

Second, this new argument is not a challenge to our appellate subject matter jurisdiction. It is presented as an alternative argument -- the grant of Joanne's motion to dismiss must be affirmed because *the district court* lacked subject matter jurisdiction over the case. "In general, dismissal for lack of subject matter jurisdiction is without prejudice" so that plaintiffs may reassert their claims in a competent court. Missouri ex rel. Koster v. Harris, 847 F.3d 646, 656 (9th Cir. 2017). We must of course consider the issue because subject matter jurisdiction is a threshold inquiry at any stage of a lawsuit brought in federal court. See, e.g., Slater

-4-

v. Republic-Vanguard Ins. Co., 650 F.3d 1132, 1134 (8th Cir. 2011). But if Joanne's interpretation of § 1359 is correct, then we should not affirm. We should remand with directions to dismiss the action without prejudice.

Section 1359, enacted as part of the 1948 revision of the Judicial Code, replaced two prior statutes regulating the use of devices to create diversity jurisdiction. In Kramer v. Caribbean Mills, Inc., 394 U.S. 823 (1969), the Supreme Court considered an assignment of one party's interest in a contract to a Texas attorney to create diversity jurisdiction with the other party to a contract dispute. Observing that only a small number of cases decided under § 1359 involve diversity based on an assignment, the Court held that both precedent and the statute's purpose compelled the conclusion that "this assignment was 'improperly or collusively made' within the meaning of § 1359." Id. at 828. Assignee Kramer had a "total lack of previous connection with the matter and [reassigned] a 95% interest back to [the assignor]." Id. at 827. Therefore, "the District Court lacked jurisdiction to hear this action, and [] petitioner must seek his remedy in the state courts." Id. at 830.

Our recent case applying § 1359 in the assignment context involved, like Kramer, an assignment by merger to a newly-formed out of state corporation to create diversity jurisdiction for breach of contract litigation. Branson Label, Inc. v. City of Branson, 793 F.3d 910 (8th Cir. 2015). Without discussing the text of the statute, we affirmed the district court's dismissal of the assignee's federal lawsuit because the assignee "collusively manufactured subject-matter jurisdiction in violation of 28 U.S.C. § 1359." Id. at 912. We approved the district court's use of a multi-factor test for determining "whether an assign[ee] of a legal claim is precluded from *invoking* diversity jurisdiction under § 1359." Id. at 916 (emphasis added).

On appeal, Joanne cites no case applying § 1359 in a similar situation. She simply relies on her conclusory assertion that the Assignment was improperly collusive because Paul's "sole intent was to create diversity in order to put what

should be a state court matter into federal court." In our view, on the facts of this case, Joanne's argument is contrary to the plain language of § 1359, which her brief ignores:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively *made or joined* to invoke the jurisdiction of such court [emphasis added].

Here, Paul's Assignment did not result in a party being "made" or "joined" to create diversity jurisdiction. Eric and Melanie, the initial Plaintiffs, are diverse from Joanne and possess a substantial interest in the outcome of the lawsuit as named beneficiaries of the CDs whose funds they seek to recover.[4] The purpose of Paul's Assignment was to preserve diversity jurisdiction, which was apparent on the face of the complaint Eric and Melanie filed, against Joanne's Rule 19 motion to *destroy* diversity jurisdiction based on Plaintiffs' alleged failure to join a non-diverse indispensable party. This is not a collusive *joinder* proscribed by § 1359. As the District of Columbia Circuit has observed:

> We realize that burgeoning dockets are burdening federal courts. Yet Congress has so far proscribed only collusive joinder meant to invoke federal jurisdiction, see 28 U.S.C. § 1359; parties may still obtain a federal forum by colluding not to join.

Western Md. Ry. v. Harbor Ins. Co., 910 F.2d 960, 964 (D.C. Cir. 1990); cf. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 572 (2004) (dismissal of non-diverse party to cure jurisdictional defect is longstanding exception to the rule that diversity jurisdiction must exist when complaint is filed).

---

[4]The amount-in-controversy requirement in 28 U.S.C. § 1332(a) is not at issue.

Of course, an attempt to create diversity jurisdiction "by colluding not to join" will not succeed if it results in failure to join an *indispensable* non-diverse party. As the district court recognized in addressing this issue, determining whether a non-party is an indispensable party is a two-step process. First, the court must determine whether the non-joined party is a "required" (necessary) party under Rule 19(a)(1). Sorenson, 2022 WL 329678, at *4. If the non-party is necessary under Rule 19(a)(1), the court must conduct a multi-factor analysis under Rule 19(b) to "determine whether, in equity and good conscience," the action should proceed or be dismissed. Id. "[O]nly if the non-party is necessary pursuant to Rule 19(a)(1) does the court analyze the matter under Rule 19(b)." Id. (quotation omitted).

On appeal, Joanne argues the district court lacked diversity jurisdiction because Paul's incomplete Assignment left Joanne facing the possibility of multiple or inconsistent obligations. See Rule 19(a)(1)(B)(ii). But the district court found that Paul's Assignment transferred to Melanie his entire interest in the assets at issue in this litigation; Paul "no longer is an indispensable party and diversity jurisdiction now exists." Sorenson, 2022 WL 329678, at *4. That is the essential Rule 19(a)(1) finding. Joanne did not cross appeal that finding. Therefore, it is established for purposes of this appeal that Paul was not a required party, so we need not consider the equitable Rule 19(b) factors.

For these reasons, the district court did not commit plain error in deciding that it had diversity subject matter jurisdiction without considering § 1359 *sua sponte*.

**B. The Merits.** Eric and Melanie argue the district court erred in dismissing the FAC with prejudice under Rule 12(b)(6) and Rule 17(a) because, as the intended third party beneficiaries of non-probate assets (CD1 and CD2), they have standing to

-7-

assert claims for civil fraud and civil theft.[5]  We review *de novo* the district court's Rule 12(b)(6) dismissal, accepting as true the well-pleaded allegations in the FAC and drawing all reasonable inferences in favor of Plaintiffs as non-moving parties. Iqbal, 556 U.S. at 678.  Our first task is to determine what claims of fraud and civil theft were asserted in the FAC.

The FAC alleges that in December 2015 the wife of Joanne's son told Eric that Decedent wanted his children to have a $108,000 Certificate of Deposit ("CD1") Decedent had saved.  Eric was told by a Twin Cities bank manager that the CD account was current but could not be paid to the named beneficiaries because Joanne's name "is still on it."  Joanne told Eric she added herself as joint holder to some of Decedent's accounts to keep them "safe" and to shield the funds from "Veterans Hospice Care" if Decedent used that program.  Joanne eventually paid the Sorenson siblings $84,000 ($28,000 each) for CD1 and told Eric they would receive the remaining $24,000 ($8,000 each) if they waived any rights to Joanne's future estate.  Eric refused to do so.  The FAC also alleges that Eric learned that Decedent opened another Certificate of Deposit account ("CD2") at a Twin Cities credit union in 2009 worth $108,000 or more.  Joanne has not paid the $24,000 allegedly owed to the siblings on CD1; she maintains that CD2 does not exist.

The FAC alleges it is "highly likely" that Joanne used her Power of Attorney to put her name on Decedent's bank accounts, acting as Decedent's agent before his death.  As the Power of Attorney ended when Decedent died, if "any property the Defendant has attached her name to as Attorney in Fact . . . should go to her. . . . The plaintiffs can only call this Civil Theft."  The FAC further alleges that Joanne disclosed CD1 and offered Plaintiffs part payment "in a fraudulent manner to make

---

[5]Plaintiffs brief this issue as though it is a constitutional question of Article III standing.  It is not.  It is simply the Rule 12(b)(6) issue of who, under substantive Minnesota law, possesses the right Plaintiffs seek to enforce.

them think that it was all that existed . . . while keeping the larger [CD2] for her own use." The FAC alleges "Plaintiffs believe that CD2 has been taken and possibly converted with the use of Power of Attorney," and that "Plaintiffs now own one-hundred percent of all claims in this case." The FAC seeks damages "for any and all property . . . found to have the Plaintiffs name . . . as beneficiaries and where [Joanne] has attached her name to it as an Agent after mid-2010."

Plaintiffs' fraud and civil theft claims are expressly based upon Joanne's alleged abuse of her power as Decedent's Attorney-in-Fact under a statutory short form power of attorney -- (i) making herself a joint holder of CD1 and CD2 before Decedent's death, (ii) withdrawing the Certificate of Deposit funds after his death, and (iii) refusing to turn over the CD proceeds to Plaintiffs, the P.O.D. (payable on death) beneficiaries named by Decedent in the instruments. Construing the applicable Minnesota statutes, the district court concluded that the claims *asserted in the FAC* are claims that belong to Decedent, for actions by Joanne before his death, and to decedent's estate, for actions taken as Attorney-in-Fact after his death. We agree.

**(i)** Plaintiffs' primary complaint is that Joanne made herself a joint holder of the CD accounts during Decedent's lifetime. But Decedent checked the box in the power of attorney form that authorized Joanne as Attorney-in-Fact "to transfer my property to the attorney in fact." Minn. Stat. § 523.23, subd. 1, Form, part Third. Checking that box gave Joanne authority "to make gifts on behalf of the principal [Decedent] . . . to the attorney-in-fact . . . for purposes which the attorney-in-fact deems to be in the best interest of the principal, specifically including minimization of . . . taxes." Minn. Stat. § 523.24, subd. 8(2). We agree with Plaintiffs that Joanne when acting as Attorney-in-Fact owed Decedent as principal a fiduciary duty to act in his best interest. See Minn. Stat. § 523.21; State v. Campbell, 756 N.W.2d 263, 271 (Minn. App. 2008). Breach of that duty, for example by impermissible self-dealing, is actionable. See Hertzog v. Purcell, No. C7-02-120, 2002 WL 31371949, at *3, 5 (Minn. App. Oct. 22, 2002). But so long as the alleged CD1 and

CD2 accounts were still in effect, any civil claim alleging that Joanne breached her fiduciary duty as Attorney-in-Fact by exercising her authority to become a joint holder could only be asserted by Decedent during his lifetime. "A P.O.D. account belongs to the original purchasing or depositing party during the party's lifetime and not to the P.O.D. payee or payees." Minn. Stat. § 524.6-203, subd. (b).

**(ii)** Plaintiffs further claim that Joanne committed civil theft when she withdrew funds from the CD accounts after Decedent's death. At that moment, Plaintiffs allege they were the P.O.D. beneficiaries named on CD1 and CD2 and therefore "owned" the funds. But under Minnesota law, "the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than to transfer the rights of the decedent as part of the estate." Minn. Stat. § 524.6-204, subd. (c). The FAC alleged that the manager of the bank that issued CD1 would not pay the account funds to the P.O.D. beneficiaries because Joanne, a joint account holder, was "still on it." This confirms that, after Decedent's death, Joanne had the unfettered right to withdraw the funds as joint owner and as personal representative of the estate of the other joint owner. There was no civil theft *from Plaintiffs* when she did so; the P.O.D. account did not belong to Plaintiffs so long as any joint account holder survived. Cf. TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC, 890 N.W.2d 423, 431 (Minn. App. 2017). Therefore, if withdrawal breached Joanne's fiduciary duties as Attorney-in-Fact, as Plaintiffs allege, the claim belonged to Decedent's estate. Plaintiffs argue this principle does not apply because the Certificates of Deposit are non-probate assets. They cite no authority for this assertion. A non-probate asset is still part of a decedent's estate. See Minn. Stat. § 524.1-201, subd. (17). Decedent's estate included probate assets.

**(iii)** Plaintiffs allege that Joanne committed fraud and civil theft when she put the withdrawn CD funds to her personal use. That was not action taken by Joanne as Attorney-in-Fact under the expired power of attorney. It may be that, if Joanne did keep money Decedent intended his children to have, they would have a third party

-10-

beneficiary claim for conversion or unjust enrichment. Joanne's payment of $84,000 and offer to pay $24,000 more in exchange for broad releases seems like recognition of some obligation to Decedent's children that extended beyond her actions as Decedent's Attorney-in-Fact. But those claims were not asserted.

For these reasons, we conclude the district court properly granted Joanne's Rule 12(b)(6) motion because Plaintiffs' FAC failed to state plausible claims of fraudulent misrepresentation and civil theft. Therefore, we need not separately consider the district court's alternative ruling that Eric and Melanie are not "real parties in interest" under Rule 17(a).[6]

**(iv)** Finally, Plaintiffs allege the district court abused its discretion in dismissing the FAC with prejudice, leaving them unable to assert additional or amended claims in an amended pleading. In a footnote in Plaintiffs' brief to the district court opposing Joanne's second motion to dismiss, counsel stated: "Plaintiffs intend to request leave of the Court to amend their [FAC] to add additional causes of action that are supported by the facts currently alleged, including but not limited to breach of fiduciary duty, unjust enrichment, conversion, and conversion of a negotiable instrument." No motion for leave to amend was ever filed, despite nearly a year passing between submission of that brief and the district court's ruling on Joanne's motion to dismiss. The district court dismissed the FAC with prejudice. Briefly responding to Plaintiffs' statement of their intent to amend, the district court stated, "all of these proposed claims suffer from the same defect . . . they are based on the legal rights of Decedent, not Plaintiffs." Sorenson, 2022 WL 329678, at *7. Plaintiffs did not file a motion for post-judgment leave to amend, properly supported

---

[6]"The 'real party in interest' is the person who, under governing substantive law, is entitled to enforce the right asserted, and in a diversity case, the governing substantive law is ordinarily state law." Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 404 (8th Cir. 1977).

by a proposed amended complaint.  See United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 743 (8th Cir. 2014).

In these circumstances, we conclude the district court did not abuse its discretion in dismissing with prejudice the claims asserted in the FAC.  For reasons explained above, we do not agree that additional claims regarding Joanne's use of the CD proceeds after she was done acting as Attorney-in-Fact would *necessarily* have been futile.  But without a proposed amended complaint to consider, the district court did not abuse its discretion by assuming they would be.  See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp., 559 F.3d 772, 782 (8th Cir. 2009).  Now, of course, any assertion of allegedly new claims in a new state or federal lawsuit will be subject to principles of claim preclusion.

The judgment of the district court is affirmed.

_____